IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 1:11cr341 |
| ) | |
| JOSEPH EMMANUEL MANN ) | |

### MEMORANDUM OPINION

At issue in this oxycodone conspiracy case is the government's motion for a pretrial ruling concerning the admissibility of evidence that defendant (i) distributed oxycodone prior to the time period charged in the indictment, and (ii) distributed narcotics other than oxycodone during the course of the charged conspiracy. Resolution of the government's motion requires an examination of the sometimes-subtle distinction between evidence that is <u>intrinsic</u> to the charged criminal conduct, and evidence that is <u>extrinsic</u> to the charged conduct, but nonetheless potentially admissible as "other crimes, wrongs, or acts" pursuant to Rule 404(b), Fed. R. Evid. For the reasons that follow, the government's proffered evidence is appropriately classified as intrinsic to the charged conspiracy and is thus admissible in the government's case-in-chief without a Rule 404(b) limiting instruction.[1]

I.

The pertinent facts are easily summarized. This defendant, Joseph Emmanuel Mann, is charged in a single-count indictment with conspiring with others, both known and unknown to

---

[1] Following briefing and oral argument, a ruling on the government's motion was deferred pending the parties' submission of supplemental memoranda. *See United States v. Mann*, 1:11cr341 (E.D. Va. Sept. 16, 2011) (Order). The parties thereafter filed their respective memoranda and, by Order dated September 29, 2011, the government's motion was granted. *See United States v. Mann*, 1:11cr341 (E.D. Va. Sept. 29, 2011) (Order). Recorded here are the reasons underlying that ruling.

the grand jury, to distribute oxycodone in the Eastern District of Virginia and elsewhere, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Significantly, the conspiracy charged in the indictment spans from approximately May 2007 to approximately June 2010 and includes no controlled substances other than oxycodone. Given this, the government filed the instant motion in limine seeking permission to include in its case-in-chief at trial two categories of evidence arguably outside the scope of the charged conspiracy.

Specifically, the government first seeks to present evidence that defendant distributed quantities of oxycodone prior to 2007, and thus prior to the specific time frame charged in the indictment. In this regard, the government proffers that one witness would testify that he met defendant in approximately 2004 and thereafter purchased oxycodone from defendant on a regular basis from 2004 to 2006. This individual then stopped using oxycodone for a two-year period, but ultimately reverted back to using the drug and then continued to purchase oxycodone from defendant on a regular basis beginning sometime in 2008, during the charged conspiracy period. The government further proffers that two additional witnesses would testify that they first met defendant in approximately 2004 or 2005, for the purpose of purchasing oxycodone, and that each continued to purchase oxycodone from defendant on a regular basis throughout the charged conspiracy period until approximately 2008 or 2009.

The second category of evidence as to which the government seeks a pretrial admissibility ruling relates to defendant's alleged occasional distribution of controlled substances other than oxycodone to his customers during the course of the charged conspiracy. Specifically, the government seeks to introduce evidence (i) that defendant sold one of his oxycodone customers a few grams of heroin on two occasions, (ii) that defendant occasionally gave one or

two of his oxycodone customers a small amount of cocaine or heroin as a "thank you" for their continued business, and (iii) that defendant sold methadone to one of his oxycodone customers.

With respect to each of these two categories of evidence, the government contends, first, that the proffered evidence is intrinsic to the charged conspiracy. Alternatively, in the event some or all of the proffered evidence is deemed to be extrinsic to the specific conduct at issue, the government argues that such evidence is nonetheless admissible as "other crimes, wrongs, or acts" under Rule 404(b) of the Federal Rules of Evidence. Each category of evidence is addressed separately below.

## II.

The analysis properly begins with a brief summary of Rule 404(b), Fed. R. Evid., which provides, in pertinent part, that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Rule 404(b), Fed. R. Evid. It is well-settled that Rule 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United States v. Young*, 248 F.3d 260, 271-72 (4th Cir. 2001) (internal quotation marks omitted). And, in the Fourth Circuit, evidence of prior acts must meet four requirements to be admissible under Rule 404(b), namely the evidence must be (i) relevant to an issue other than character,[2] (ii) necessary or probative of an essential claim or an element of the crime charged, (iii) reliable, and

---

[2] "Relevant evidence" is defined under the Federal Rules of Evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, Fed. R. Evid.

[3]

(iv) admissible under Rule 403, Fed. R. Evid.[3] *United States v. Queen*, 132 F.3d 991, 995, 997 (4th Cir. 1997).

Of course, the four-prong Rule 404(b) inquiry applies only to evidence of other "crimes, wrongs, or acts" that are extrinsic to the acts charged in the indictment, as Rule 404(b) does not limit the admission of evidence of other conduct that is actually intrinsic to the charged offenses. *See, e.g., United States v. Chin*, 83 F.3d 83, 87 (4th Cir. 1996). Acts are appropriately classified as intrinsic, and thus not subject to a Rule 404(b) analysis, "when they are inextricably intertwined [with the charged conduct] or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *Id.* at 88 (4th Cir. 1996) (citation and internal quotation marks omitted). Put differently, "[e]vidence of uncharged conduct is not other crimes evidence subject to Rule 404 if the uncharged conduct arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial." *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008) (citations omitted and internal quotation marks omitted). These general principles, applied here, compel the conclusion that all of the evidence as to which the government seeks a pretrial admissibility ruling is, as the government argues in the first instance, actually intrinsic to the charged oxycodone conspiracy.

With respect to the first of the two categories of evidence at issue, the Fourth Circuit has recognized that "the mere fact that the evidence [sought to be introduced] involve[s] activities occurring before the charged time frame of the conspiracy does not automatically transform that

---

[3] Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, Fed. R. Evid.

[4]

evidence into 'other crimes' evidence" for purposes of Rule 404(b). *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994) (citations omitted). For example, such evidence is not appropriately viewed as "other crimes" evidence where, as here, it "arose out of the same . . . series of transactions as the charged offense." *Id.* In this case, it is unmistakably clear that defendant's distribution of oxycodone to several of his regular customers in the years leading up to the charged conspiracy period constitutes part of "the same series of transactions as the charged offense." *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008). To be sure, the earlier transactions at issue involve precisely the same individuals, the same controlled substance, and the same transactional details as those alleged to have occurred during the specific time period charged in the indictment. It follows from this that these transactions are intrinsic to the charged conspiracy. *See, e.g., United States v. Harvey*, 159 F. App'x 451, 456-57 (4th Cir. 2005) (concluding that drug transactions occurring before the time frame covered by the indictment were not "other crimes" within the meaning of Rule 404(b) where the earlier transactions "were substantially identical to the conspiracy alleged in the indictment" and involved the same residential area, the same controlled substance, and were close in time to the charged time period).

Moreover, evidence of defendant's earlier oxycodone transactions with customers to whom he continued to distribute oxycodone throughout the course of the charged conspiracy "serves to complete the story of the crime on trial" and provides "predicate evidence necessary to provide context to the . . . drug distribution scheme that took place within the charged time frame." *Kennedy*, 32 F.3d at 885-86. In this regard, such evidence will not only allow the government to paint a complete picture for the jury by laying out the preliminary transactions leading up to the charged conspiracy, but it will also assist the jury in understanding the

circumstances under which defendant's regular customers first met and became affiliated with defendant. *Id.* (concluding that evidence of a defendant's drug distribution activities falling outside the charged conspiracy period and involving individuals not named in the indictment was not "other crimes" evidence under Rule 404(b) when it provided background information on defendant's activities during the preparatory stages of the conspiracy and "served to complete the story of the crime on trial"). In sum, therefore, evidence of defendant's earlier oxycodone transactions with his regular customers is intrinsic to the conduct charged in the indictment and is thus admissible in the government's case-in-chief without a Rule 404(b) limiting instruction.

The same is true with respect to the second category of evidence at issue in the government's motion. Indeed, evidence that defendant occasionally distributed controlled substances other than oxycodone to his customers as a means of keeping those customers satisfied and thanking them for their continued business is not only "inextricably intertwined" with defendant's contemporaneous distribution of oxycodone to those same individuals, but also forms an integral part of the ongoing supplier/customer relationships that form the basis of the charged conspiracy. *Chin*, 83 F.3d at 88 (concluding that statements between a drug supplier and one of his customers regarding a possible contract murder made during an exchange of heroin for cash were "an intrinsic part of a drug deal and the witness' account of the context and circumstances surrounding the deal").[4] Because of this, the government's second category of proffered evidence, like the first category, is intrinsic to the conduct charged in the indictment

---

[4] *See also United States v. Masters*, 622 F.2d 83, 86-87 (4th Cir. 1980) (following the reasoning of the Fifth Circuit in *United States v. Bloom*, 538 F.2d 704 (5th Cir. 1976) holding that a defendant's preliminary discussions relating to the potential purchase of marijuana and cocaine were admissible in a heroin distribution case).

and does not constitute "other crimes" evidence necessitating the four-prong Rule 404(b) analysis under *Queen*.[5]

But this still does not end the analysis, for all evidence — whether intrinsic or extrinsic — must also satisfy the requirements of Rule 403, Fed. R. Evid. to be admissible in a criminal prosecution. And, here, it is without doubt that the probative value of the government's proffered evidence is not "substantially outweighed by the danger of unfair prejudice" so as to require exclusion in this case. *See* Rule 403, Fed. R. Evid. (providing that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence"). This is particularly so in light of the government's representation that the evidence at issue constitutes only a small fraction (no more than 5%) of all of the evidence it intends to present against defendant in its case-in-chief at trial.[6]

### III.

In sum, then, it is clear in the circumstances presented here that evidence that defendant (i) distributed oxycodone to several of his regular customers prior to the time period charged in the indictment, and (ii) occasionally distributed narcotics other than oxycodone to his regular

---

[5] Although not necessary to the result reached here, it is nonetheless important to note that even were the government's proffered evidence not appropriately viewed as intrinsic to the charged conspiracy, such evidence would clearly satisfy the requirements of Rule 404(b), as such evidence is (i) relevant to an issue other than character, (ii) necessary or probative of an element of the crime charged, (iii) reliable, and (iv) admissible under Rule 403, Fed. R. Evid. *Queen*, 132 F.3d at 995, 997.

[6] *See, e.g., United States v. Zeleke*, ___ F. Supp. 2d ___, 2011 WL 3875420, at *4 (E.D. Va. Aug. 31, 2011) (recognizing, in the Rule 404(b) context, that it is important "to avoid having evidence concerning defendant's prior conduct consume the lion's share of the trial" and thereby "be the 'tail' that wags the 'dog' of the offenses for which defendant is currently on trial").

customers during the course of the charged conspiracy, is intrinsic to the conspiracy charged in the instant indictment. Such evidence is therefore admissible in the government's case-in-chief at trial without a Rule 404(b) limiting instruction.

An appropriate Order has already issued.

/s/
T. S. Ellis, III
United States District Judge

Alexandria, VA
October 11, 2011