JOSEPH EMMANUEL MANN,       )
    Petitioner,       )
           )
    v.       )    **Criminal No. 1:11-cr-341**
           )    **Civil Action No. 1:14-cv-16**
UNITED STATES OF AMERICA,       )
    Respondent.       )
           )
           )

## MEMORANDUM OPINION

Petitioner Joseph Emmanuel Mann, a federal inmate convicted of conspiracy to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846, has filed a motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255, based on four claims of ineffective assistance of counsel. Specifically, petitioner contends that Counsel was ineffective because: (i) Counsel failed to move for an evaluation of petitioner's competence based on petitioner's past medical history and repeated drug use; (ii) Counsel failed to give petitioner proper advice regarding both a plea agreement offered by the government and the possibility that he could plead straight up to the indictment, and instead erroneously advised petitioner to proceed to trial; (iii) Counsel failed to argue for a downward departure in petitioner's Guidelines based on U.S.S.G. §§ 5K2.13 or 5H1.3; and (iv) Counsel failed to object to the drug amount attributable to petitioner on the ground that some of the pills charged to the conspiracy were obtained and used by petitioner pursuant to valid prescriptions for back pain. As the parties have fully briefed the

issues presented and neither oral argument nor an evidentiary hearing would aid the decisional process, petitioner's motion is ripe for disposition.[1]

For the reasons that follow, petitioner's motion must be denied with respect to his first three claims, but granted with respect to his fourth claim, and accordingly, petitioner is entitled to a new sentencing hearing where appropriate findings can be made regarding the drug amount attributable to petitioner.

## I.

A brief summary of the factual and procedural history of the case places petitioner's motion in context. Thus, the record reflects that from May 2007 to approximately June 2010, petitioner conspired with others to distribute oxycodone in the Eastern District of Virginia and elsewhere. Petitioner operated largely out of Washington, D.C. In his role in the conspiracy, petitioner obtained oxycodone prescriptions from a doctor, filled the prescriptions, and then sold many of those pills for profit at various locations. In his criminal proceedings through trial, petitioner was represented by court-appointed counsel (hereinafter "Counsel").

On July 28, 2011, a federal grand jury in the Eastern District of Virginia returned a one-count indictment charging petitioner with conspiracy to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Subsequently, on August 5, 2011, petitioner appeared for an arraignment and pled not guilty to the indictment and requested a jury trial. Thereafter, in early August, the government offered petitioner a plea agreement that would result in a recommended

---

[1] Although petitioner requests an evidentiary hearing with respect to his second claim, 28 U.S.C. § 2255 states that a hearing is not necessary when "the motion and the files of the case conclusively show that the prisoner is entitled to no relief." In this case a hearing is not necessary as the record conclusively compels the conclusion that petitioner's second claim fails on the merits. *See United States v. Witherspoon*, 231 F.3d 923, 925-26 (4th Cir. 2000).

low-end Guidelines sentence of 168 months.[2] Petitioner rejected this plea offer. As time went on, the government became persuaded that the conspiracy had involved a greater volume of pills, so the government next offered petitioner a plea agreement that would result in a recommended low-end Guidelines sentence of 216 months. Petitioner declined this plea offer as well and continued to maintain his plea of not guilty. The case then went to trial and on October 14, 2011, the jury returned a verdict of guilty on the single count of conspiracy to distribute oxycodone.

Prior to sentencing, the Probation Officer conducted a detailed investigation and prepared a Presentence Investigation Report (PSIR). The Probation Officer calculated petitioner's offense level as 34, pursuant to U.S.S.G. § 2D1.1(c)(3). This calculation was based on the Probation Officer's estimate, based solely on patient prescription records obtained from CVS Pharmacies in Washington, D.C. and Virginia, that it was reasonably foreseeable to petitioner that the conspiracy was responsible for the distribution of 8,587 80 mg oxycodone pills and 1,986 40 mg oxycodone pills, which the Probation Officer correctly concluded was equivalent to between 3,000 to 10,000 kilograms of marijuana.[3] This, combined with the Probation Officer's conclusion that petitioner fell into criminal history Category I, resulted in a recommended Guidelines sentencing range of 151 to 188 months.

During the course of petitioner's sentencing hearing, Counsel raised no objection to the drug amount calculation in the PSIR, nor did Counsel object to any other aspect of the PSIR's calculation of petitioner's offense level. Counsel did argue, however, for a two-level sentencing

---

[2] The first plea agreement the government offered petitioner is not part of the record and thus it is unclear whether that plea agreement included an agreed-upon drug amount or offense level. It is worth noting, however, that a sentencing Guidelines range for Category I defendants that begins at 168 months corresponds to an offense level of 35.

[3] The Probation Officer correctly used the Guidelines conversion rate of 1 gram of oxycodone to 6700 grams of marijuana. *See* U.S.S.G. § 2D1.1(c) cmt. n. 8(D) (2014).

credit for acceptance of responsibility based on U.S.S.G. § 3E1.1. This argument failed. After hearing testimony from an FBI agent to the effect that petitioner had asked other individuals to "help him out" by falsifying testimony at petitioner's trial, the Court ruled that petitioner's conduct indicated that he had "not accepted responsibility."[4] Moreover, the record reflected that petitioner maintained his plea of not guilty through the end of trial and never fully admitted his offense conduct.[5] As a result, petitioner was not entitled to the two-level acceptance of responsibility credit pursuant to U.S.S.G. § 3E1.1. *See* U.S.S.G. § 3E1.1 cmt. n. 1(A) (2014) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility . . . ."). In the end, following petitioner's allocution and the arguments of Counsel and government counsel, petitioner was sentenced to 108 months of imprisonment—a downward variance from the advisory guidelines range—to be followed by five years of supervised release. As a special condition of his supervised release, petitioner was required to participate in and successfully complete a program of drug testing and rehabilitation.

Thereafter, petitioner, by counsel,[6] timely appealed his conviction and his sentence, arguing that the evidence at trial was insufficient to sustain his conviction and that the sentence imposed on petitioner was unreasonable. The Fourth Circuit affirmed both petitioner's conviction and sentence. *See United States v. Mann*, 494 F. App'x 389 (4th Cir. 2012). In doing

---

[4] *United States v. Mann*, No. 1:11-cr-341 (E.D. Va. Jan. 27, 2012) at 16, 19, 29 (Doc. 91) (hereinafter "Sentencing Transcript"). Petitioner's testimony to the contrary was not found to be credible. *Id.* at 28-29.

[5] In fact, during his allocution, petitioner, instead of admitting the relevant conduct, claimed that the prosecution "twisted" the relevant facts. *Id.* at 11.

[6] On appeal, petitioner was represented by different court-appointed counsel.

so, the Fourth Circuit panel noted that there was "no doubt that the evidence at trial was sufficient to support the jury's verdict," and that the "district court properly calculated [petitioner's] Guidelines range, and thoroughly explained its reasoning supporting [petitioner]'s below-Guidelines sentence." *Id.* at 390-91.

After the failure of petitioner's appeal, petitioner, *pro se*, filed this timely motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255. Petitioner's motion is based entirely on Counsel's alleged constitutionally ineffective assistance. Specifically, petitioner makes the following four ineffective assistance of counsel claims:

(1) Counsel failed to move for an evaluation of petitioner's competence based on his past medical history and repeated drug use;

(2) Counsel failed to advise petitioner properly on the advantages of pleading guilty, both pursuant to a proffered plea agreement and straight up to the indictment, and erroneously advised him to proceed to trial;

(3) Counsel failed to investigate or present evidence to support a downward departure pursuant to U.S.S.G. §§ 5K2.13 or 5H1.3; and

(4) Counsel failed to object to the PSIR's offense level on the ground that the drug amount attributable to petitioner erroneously did not subtract the oxycodone pills petitioner consumed for personal use pursuant to valid prescriptions.

## II.

It is well-established that petitioner's § 2255 claims of ineffective assistance of counsel are governed by the settled and familiar two-pronged legal analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984). Specifically, to prevail on a claim of ineffective assistance of counsel, petitioner must show first, that Counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Importantly, judicial review of Counsel's performance in this context is "highly deferential." *Id.* at 689. Indeed, to establish that Counsel's performance was objectively unreasonable, petitioner must overcome a strong

presumption that Counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Id.* at 690. If petitioner demonstrates that Counsel's performance was objectively unreasonable, *Strickland* next requires petitioner to establish that "the deficient performance prejudiced the defense." *Id.* at 688. Thus, in step two of the *Strickland* analysis, petitioner must demonstrate "that there is a reasonable probability that, but for [C]ounsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The prejudice analysis also requires consideration of whether "the result of the proceeding was fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). In other words, Counsel may be deemed constitutionally ineffective only if his or her "conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. It is through the lens of these guiding principles that petitioner's claims must be analyzed.

### III.

Petitioner's first ineffective assistance of counsel claim is that Counsel did not move for an evaluation of petitioner's mental competence based on his past medical history and repeated drug use. In this respect, it is well-settled that "[a]n attorney's duty, of course, does not mandate the exploration of the issues of sanity and/or competency in every instance." *Wood v. Zahradnick*, 430 F. Supp. 107, 111 (E.D. Va. 1977), *aff'd*, 578 F.2d 980 (4th Cir. 1978). But where "the facts known and available, or with minimal diligence accessible, to defense counsel raise a reasonable doubt as to a defendant's mental condition, counsel has an affirmative obligation to make further inquiry" regarding defendant's mental condition. *Id.* And where such reasonable doubt arises, a lawyer "is not entitled to rely on his own belief about a defendant's mental condition," but instead must make a reasonable investigation when the facts known and

available raise a question as to a defendant's competence. *Becton v. Barnett*, 920 F.2d 1190, 1192 (4th Cir. 1990). Importantly, demonstrating ineffective assistance of counsel does not require proof of incompetence under the test set out in *Dusky v. United States*, 362 U.S. 402 (1960).[7] Rather, defective performance is established if it is shown that "[h]ad counsel taken reasonable steps to investigate, a hearing could have been held on the issue of . . . competency, and the *Dusky* standard would have been applied at that time." *Becton*, 920 F.2d at 1194.[8]

Counsel has submitted an affidavit in which he correctly notes that a review of petitioner's medical records "did not raise a concern about his mental health, nor did the records show brain injuries."[9] Childhood bouts with polio and meningitis and a history of drug use do not, by themselves, raise a reasonable doubt as to petitioner's mental competency. Moreover, Counsel also states that he spoke to the director of the medical clinic at the Alexandria Jail, who confirmed that petitioner was housed with the general population and was not in need of a specialized medical unit.[10] Finally, during the course of Counsel's numerous visits with

---

[7] Under *Dusky*, a defendant is competent to stand trial if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.

[8] It is worth noting that the government misstates the *Strickland* performance prong by arguing that petitioner cannot demonstrate that he would have been deemed incompetent to stand trial under *Dusky*, which, as stated above, is not the relevant question regarding Counsel's performance under *Strickland*. Thus, with respect to the performance prong, petitioner need not demonstrate that he would have been declared incompetent as a result of the evidentiary hearing, but only that the Court would have held an evidentiary hearing on petitioner's competence pursuant to 18 U.S.C. § 4241 *et seq*. *See Becton*, 920 F.2d at 1194.

[9] Government's Response in Opposition to Petitioner's Motion under 28 U.S.C. § 2255, Ex. 1 at 2 (hereinafter "Kiyonaga affidavit").

[10] *Id.*

7

petitioner, Counsel noted that petitioner was both lucid and helpful in the preparation of the defense.[11]

An examination of the record provides further confirmation of petitioner's competence. Thus, at the pre-trial motion hearing on September 16, 2011, petitioner effectively communicated his complaints about proper medical care to the Court and at this hearing, petitioner complained only of sleep apnea and swollen glands, but did not raise his competence as a medical issue.[12] Additionally, in the course of the trial, petitioner was carefully questioned by the Court, out of the presence of the jury, to ensure that petitioner was both competent and capable of waiving his right to testify and that his waiver of that right was both knowing and voluntary.[13] And during petitioner's allocution at his sentencing, petitioner gave no indication that he lacked competence, and instead lamented that he was "contrite and remorseful for [his] actions" and beseeched the Court to impose a lenient sentence so that he could "spend time with" his grandchildren and become a "productive citizen."[14]

In sum, the record demonstrates that the facts known to Counsel—a history of drug abuse and bouts with polio and meningitis—raised no reasonable doubt concerning petitioner's mental competence. As to a history of drug use, circuit precedent makes clear that withdrawal effects from drug use do not establish "inadequate competence to stand trial." *Barfield v. Woodard*, 748

---

[11] *Id.*

[12] *United States v. Mann*, No. 1:11-cr-341 (E.D. Va. Sept. 16, 2011) at 5 (Doc. 90) (Motion Hearing).

[13] *United States v. Mann*, No. 1:11-cr-341 (E.D. Va. Oct. 14, 2011) at 503 (Doc. 89) (hereinafter "Trial Transcript") ("The Court in the case of the United States against Joseph Mann finds that the defendant is fully competent and capable of waiving his right to testify, and that the right is knowingly and voluntarily waived.").

[14] Sentencing Transcript at 11-12.

F.2d 844, 851-52 (4th Cir. 1984). Equally unpersuasive is petitioner's conclusory assertion that a series of maladies he had as a young child, polio and meningitis, should have put Counsel on notice to file a motion regarding petitioner's mental competency; there is simply no sound basis to believe that the ailments, which petitioner suffered as a child, affected his competence as an adult. Moreover, the prison's decision not to place petitioner in a special medical unit, but instead to house petitioner with the general population further undermines petitioner's claim, as does the fact that petitioner aided Counsel in preparing the defense.

Petitioner also contends that his apparent confusion over pleading guilty immediately prior to trial should have alerted Counsel as to his incompetence. This contention is similarly meritless. The record reflects that immediately before the jury was empaneled, petitioner advised the Court that he wished to plead guilty, whereupon the Court, after giving petitioner earphones to assist petitioner since he was hard of hearing, advised him of the following:

> Pay attention to what I say. My voice is fairly loud. I am advised that you now wish to enter a plea in this case. And before I begin the plea colloquy, I want to be sure that you have had an opportunity to discuss the matter fully with your attorney, and to discuss the nature of the plea and the terms of the plea and anything else that may be related to the plea with your attorney. Did you hear me, Mr. Mann?[15]

In response, petitioner replied "Yes."[16] Only then, after being asked what his answer was as to whether he needed more time to discuss the nature and terms of the plea did petitioner state that he was "so confused."[17] A recess was then taken for a full hour during which petitioner had every opportunity to consult with Counsel. The record reflects that upon return from the recess, petitioner did not indicate that he wanted to plead guilty, and accordingly the trial proceeded. In

---

[15] Trial Transcript at 17.

[16] *Id.*

[17] *Id.*

sum, petitioner's single statement that he was "so confused" when asked whether he wanted to plead guilty could not have reasonably given rise to an inference of mental incompetence, especially given the substantial record evidence pointing to a contrary conclusion.

In an effort to buttress his claim that Counsel should have filed a motion for a mental competency evaluation, petitioner contends that his case is analogous to *Wood* and *Becton*. He is mistaken; both cases are plainly inapposite. In *Wood*, the petitioner, a 27-year old man, committed the heinous and bizarre crime of brutally beating and raping a 67-year old woman, and counsel in that case stated he observed petitioner to be "confused, unresponsive, and suffering from withdrawal symptoms." *Wood*, 430 F. Supp. at 111. Thus, in *Wood*, petitioner's ineffective assistance claim was sustained because with "minimal effort, counsel could have learned of the petitioner's low I.Q. scores." *Id.* Similarly, in *Becton*, the petitioner there was also charged with raping an elderly woman, and was similarly unresponsive, exhibited withdrawal symptoms, and displayed "bizarre behavior." *Becton*, 920 F.2d at 1193. Given this, the Fourth Circuit held that counsel should have been on notice as to petitioner's lack of competence. *Id.*

Both *Wood* and *Becton* are clearly significantly different from the case at bar. In sharp contrast to the facts in *Wood* and *Becton*, petitioner's crime was not bizarre or heinous, nor did petitioner exhibit withdrawal symptoms, bizarre behavior, or unresponsiveness to Counsel's questions in the preparation of his case. In sum, petitioner, on this record, has fallen far short of overcoming the "strong presumption" that Counsel's conduct in not seeking a competency hearing fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.

Nor can petitioner demonstrate that he suffered any prejudice even assuming Counsel's failure to move for a hearing on petitioner's mental competence fell below an objective standard of reasonableness. To show prejudice, petitioner would have to show a reasonable probability that Counsel could have established that he was "not competent to stand trial" by showing that petitioner was unable to consult with Counsel with a reasonable degree of rational understanding and unable to understood the proceedings against him, or in the alternative, that petitioner was "not guilty by reason of insanity." *Becton*, 920 F.2d at 1194. Given the numerous indicators of petitioner's competence, petitioner cannot demonstrate a reasonable probability that he would have been declared incompetent to stand trial had Counsel moved for a hearing pursuant to 18 U.S.C. § 4241 to determine petitioner's competence or that he would have been declared insane. In sum, petitioner's ineffective assistance claim based on the failure to seek a competency hearing fails both *Strickland* prongs.

## IV.

Petitioner next argues that Counsel was ineffective by advising petitioner to forego a proffered plea agreement and proceed to trial. Specifically, with respect to this claim, petitioner advances two separate arguments: (i) that a factual dispute exists over whether Counsel advised petitioner to accept the government's first plea offer, necessitating an evidentiary hearing; and (ii) that Counsel failed to explain the advantages of pleading "straight up" to the indictment[18] rather than proceeding to trial, with the result, petitioner claims, that he received a longer sentence. Each argument is addressed in turn.

---

[18] As used by petitioner and in common parlance, the phrase pleading "straight up" to the indictment simply means pleading guilty to the offense charged in the indictment without a plea agreement.

It is well-settled that defense counsel has a duty to communicate to a defendant all formal plea offers from the prosecution. *See Missouri v. Frye*, 132 S.Ct. 1399, 1410 (2012). But importantly, although a criminal defense attorney is required to communicate a formal plea offer to a client and to provide the client all relevant facts along with potential alternatives, "an attorney is under no obligation to recommend a particular course of action to a client." *Carillo-Morales v. United States*, 952 F. Supp. 2d 797, 804 (E.D. Va. 2013) (citing *Jones v. Murray*, 947 F.2d 1106, 1110 (4th Cir. 1991)). Thus, it is the defendant who ultimately must decide whether to accept or reject a plea offer, and counsel is required only to advise the client of available alternatives and important factors to consider in weighing the client's options. *See Jones*, 947 F.2d at 1111. In order for a petitioner to show prejudice in the context of the plea process, a petitioner must demonstrate a "reasonable probability he would have accepted the earlier plea offer had he been afforded effective assistance of counsel." *United States v. Dickerson*, 546 F. App'x 211, 213 (4th Cir. 2013). Petitioner contends that an evidentiary hearing is necessary because although Counsel's affidavit states that he "recommended that [petitioner] accept the [first] plea offer," petitioner asserts that Counsel advised the opposite, namely that Counsel advocated for petitioner to reject the first plea offer from the government. Petitioner argues that this issue can only be resolved through an evidentiary hearing.

It is settled that "evidentiary hearings on [§] 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." *Moncrieffe v. United States*, No. 1:11cv118, 2012 WL 488259 at *4 (E.D. Va. Feb. 13, 2012). Moreover, an evidentiary hearing is "not required . . . on a § 2255 motion if the record of the case conclusively shows that the petitioner is entitled to no relief." *United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir. 1988). Here, petitioner is not entitled to an evidentiary

hearing because the record conclusively demonstrates that petitioner cannot demonstrate either ineffective performance or prejudice under *Strickland*, even accepting as true his assertion that Counsel advised him to reject the government's first plea offer.

Petitioner cannot demonstrate that Counsel's performance was deficient because even accepting petitioner's assertion that Counsel advised him to reject the government's first plea offer, such advice is within the range of reasonable professional judgment under *Strickland*. With respect to the first plea offer, the Assistant United States Attorney "had a reverse proffer with [petitioner] and [reviewed] the [first] plea offer with [petitioner] in early August" of 2011.[19] Even if Counsel advised petitioner to reject this plea offer, however, petitioner has not demonstrated that this advice was anything more than a tactical decision. *See Kolbasook v. McCoy*, 7 F. App'x 57 (2d Cir. 2001) (rejecting ineffective assistance claim because "[defendant's] attorney's advice to reject the first plea offer and later to accept the second plea offer was reasonable tactical advice, given the potential ambiguity of the evidence against [defendant] at the time of the first plea offer . . . ."). Similarly, in this case, Counsel's assessment of the evidence could have prompted his advice with respect to the government's first plea offer and petitioner has not shown any reason why that assessment was unreasonable. Therefore, petitioner has not carried his burden of demonstrating that Counsel's performance was objectively unreasonable, even assuming petitioner's assertion that Counsel advised him to reject the government's first plea offer is correct.

Petitioner also cannot show prejudice because as multiple courts have recognized, "after the fact testimony concerning [petitioner's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea

---

[19] Trial Transcript at 15.

offer." *Berry v. United States*, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012) (citing *Diaz v. United States*, 930 F.3d 832, 835 (11th Cir. 1991)). Here, petitioner cannot point to any record evidence showing that he would have accepted the government's first plea offer, even assuming Counsel had advised him to do so. Instead, petitioner relies solely on his unsubstantiated assertions which are insufficient to demonstrate prejudice. In sum, the record establishes that petitioner cannot demonstrate prejudice under *Strickland*, because even if Counsel had advised him to accept the government's first plea offer—which is what occurred according to Counsel's affidavit—petitioner lacks evidence showing he would have accepted this advice. Indeed, petitioner's steadfast adherence to his not guilty plea—which was one reason petitioner did not receive an acceptance of responsibility credit under U.S.S.G. § 3E1.1—flatly contradicts his assertion that he would have accepted the government's first plea offer.[20] At bottom, this is a situation where petitioner, in hindsight, now wishes to revive and accept the first plea offer he received. This falls far short of showing prejudice under *Strickland*.

Petitioner next contends that Counsel was ineffective in failing to advise petitioner to plead straight up to the indictment which would have resulted, he claims, in a lighter sentence than the one eventually imposed. Specifically, petitioner argues that if he had pled straight up to the indictment, he would have received a two-level credit for acceptance of responsibility under U.S.S.G. § 3E1.1,[21] and would also have received a further two-level reduction pursuant to the "safety valve" provision under U.S.S.G. § 2D1.1(b)(11) and § 5C1.2(a). *See United States v.*

---

[20] *See* Kiyonaga Affidavit at 1 ("It was also apparent that [petitioner] would not plea[d] thinking that if he waited until the last minute a better deal would appear, which it did not.").

[21] Petitioner contends that he is actually entitled to a three-level credit under U.S.S.G. § 3E1.1(b), but the three-level credit is only applicable if petitioner "timely notif[ied] authorities of his intention to enter a plea of guilty," which he did not do. Thus, petitioner, at most, would be entitled only to a two-level credit under U.S.S.G. § 3E1.1(a).

14

*Jones*, 388 F. App'x 319, 320 (4th Cir. 2010) ("A defendant may have his base offense level reduced by two levels under § 2D1.1(b)(11) if he meets all five criteria set out in § 5C1.2(a)."). Both arguments must be rejected.

It is clear that to qualify for the safety valve provision, petitioner "must establish the existence of five prerequisites" and the burden is on the petitioner to prove that "all five safety valve requirements have been met." *United States v. Arreola*, 451 F. App'x 313, 314 (4th Cir. 2011). One of the five prerequisites is "not later than the time of sentencing hearing, the defendant [must have] truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." U.S.S.G. § 5C1.2(a)(5). This did not occur; indeed there is no record evidence that petitioner ever provided the government all of the relevant information regarding the oxycodone conspiracy. Nor can petitioner plausibly argue that if he had pled straight up, he would then have supplied the government with the necessary information. First, the record is clear that petitioner never admitted all of the offense relevant conduct in his unsuccessful effort to win acceptance of responsibility, so it is doubtful that petitioner would have satisfied U.S.S.G. § 5C1.2(a)(5). Second, petitioner's after-the-fact assertions in this regard do not demonstrate ineffective assistance under *Strickland*. *See Berry*, 884 F. Supp. 2d at 463 ("[A]fter the fact testimony concerning a [defendant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer.") (internal quotation marks and citations omitted).[22]   Therefore, petitioner does

---

[22] Notably, petitioner's discussion of the requirements of the safety valve provision mentions "no firearms, violence or leadership role" and "no more than 1 criminal history point" as prerequisites, but omits any mention of the prerequisite that a defendant must provide the

not satisfy either the performance or the prejudice prong under *Strickland*. Since it is "patently clear" that petitioner was "ineligible for the safety valve," had Counsel argued for its application, not only would Counsel's argument "have been rejected, it would have been disregarded as frivolous." *United States v. Smith*, No. 1:12cv439, 2012 WL 2878248 at *3 (E.D. Va. July 11, 2012).[23]

Petitioner's argument regarding acceptance of responsibility under U.S.S.G. § 3E1.1 is similarly unavailing chiefly because the record demonstrates that even on the day of his sentencing, *despite* the fact that Counsel vigorously argued for an acceptance of responsibility credit pursuant to U.S.S.G. § 3E1.1, petitioner *still* did not accept full responsibility for his crime.[24] Indeed, the Court ruled that petitioner's conduct in asking other individuals to alter their testimony in order to protect petitioner was the very antithesis of accepting responsibility for petitioner's actions. Petitioner does not have a single piece of record evidence supporting his assertion that he would have pled straight up to the indictment and accepted responsibility for his crime other than his after-the-fact conclusory statements. But these after-the-fact, self-serving assertions are insufficient to demonstrate ineffective assistance of counsel. *See Berry*, 884 F. Supp. 2d at 463.

In sum, even assuming, as petitioner contends, that Counsel advised him to reject the first plea offer and even assuming Counsel failed to advise him that he could plead straight up to the indictment, the record shows that petitioner fails *Strickland's* performance and prejudice prongs.

government with all of the information concerning the conduct comprising the offense. This omission is no accident; petitioner did not satisfy this prerequisite.

[23] *See also Truesdale v. Moore*, 142 F.3d 749, 755 (4th Cir. 1998) ("It was not constitutionally ineffective assistance for . . . counsel not to pursue futile claims.").

[24] *See* Sentencing Transcript at 29 ("[Petitioner] has not admitted all of the relevant conduct . . . [and thus the Court is] not going to give [petitioner] acceptance of responsibility.").

## V.

Petitioner next claims that Counsel was ineffective in failing to argue for a downward

departure pursuant to U.S.S.G. § 5K2.13 and § 5H1.3. This claim is meritless.

Under U.S.S.G. § 5K2.13, a downward departure is warranted only if the defendant

committed the offense while suffering from a significantly reduced mental capacity *and* the

significantly reduced mental capacity contributed substantially to the commission of the offense.

Significantly, to be eligible for a diminished capacity departure, a "defendant must show an

inability to process information or to reason." *United States v. Withers*, 100 F.3d 1142, 1148

(4th Cir. 1996). Here, petitioner has offered no evidence that he was unable to process

information or reason during the period of his offense conduct. The record suggests the opposite

conclusion, as the very nature of petitioner's crime—participation in a large scale conspiracy to

obtain and then distribute thousands of pills of oxycodone—is further evidence that petitioner

did not have diminished mental capacity. *See Withers*, 100 F.3d at 1148 (noting that diminished

capacity reduction was not warranted in part because defendant was "fully capable of following a

complex set of instructions to transport heroin successfully into the United States").

Petitioner's argument based on diminished mental capacity due to his drug use fares no

better as U.S.S.G. § 5K2.13 is clear that the "court may not depart below the applicable guideline

range if . . . the significantly reduced mental capacity was caused by the voluntary use of drugs

or other intoxicants . . . ." Furthermore, petitioner has not demonstrated how he would qualify

for the benefit of a downward departure pursuant to U.S.S.G. § 5K2.13 beyond vague allusions

to childhood brain injuries, which do not demonstrate either an inability to reason or the requisite

causal link between those injuries and petitioner's crime. *See, e.g.*, *United States v. Ruiz*, 31 F.

App'x 530, 531 (9th Cir. 2002) (noting that "[e]ven if [defendant] could prove his allegation that

17

post-traumatic stress disorder rendered him more susceptible to committing this offense, such an allegation is not responsive to U.S.S.G. § 5K2.13" because the alleged disorder did not demonstrate an inability to reason).

Not only is it abundantly clear that petitioner did not suffer from diminished mental capacity to qualify for a downward departure under U.S.S.G. § 5K2.13, but the record is also clear that Counsel advocated for a reduction in petitioner's sentence in a variety of other ways.[25] Thus, at most, Counsel rigorously pursued a strategy petitioner does not fully agree with, but this, by itself, does not constitute ineffective assistance of counsel. *See Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987) ("[c]ounsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another."). In any event, because there is no evidence that petitioner suffered from any sort of diminished capacity which contributed substantially to the commission of his crime, it follows that even if Counsel had sought a downward departure based on U.S.S.G. § 5K2.13, that argument would have failed. Thus, petitioner's argument based on U.S.S.G. § 5K2.13 fails both *Strickland* prongs.

Equally unpersuasive is petitioner's argument based on U.S.S.G. § 5H1.3. That provision states that a departure may be warranted based on mental conditions which are "present to an *unusual* degree and distinguish the case from typical cases covered by the [G]uidelines." U.S.S.G. § 5H1.3 (emphasis added). Petitioner has not shown that he suffered from any mental conditions that were present to an unusual degree. Thus, there is simply no basis to conclude

---

[25] These attempts to reduce petitioner's sentence included (i) arguing for a downward departure based on petitioner's age and his infirmities, (ii) attempting to reduce petitioner's sentence based on petitioner's acceptance of responsibility, and (iii) contending that petitioner's sentence should have been reduced by fifty percent on the ground that failure to do so would result in an unwarranted sentencing disparity in light of a co-defendant's sentence. The attempts failed, although petitioner did receive a below-Guidelines variant sentence based on an assessment of the 18 U.S.C. § 3553(a)(1) factors as applied to petitioner.

that Counsel's performance was objectively unreasonable in not arguing for a downward departure under U.S.S.G. § 5H1.3, or that petitioner suffered any prejudice in this regard.

In sum, petitioner cannot demonstrate either ineffective performance or prejudice under *Strickland* with respect to his argument that counsel should have argued for a downward sentencing departure based on U.S.S.G. § 5K2.13 and § 5H1.3.

## VI.

Petitioner's final argument for ineffective assistance of counsel is that Counsel was ineffective in failing to object to the PSIR's calculation of the drug amount attributable to petitioner on the ground that the Probation Officer did not reduce petitioner's offense level based on oxycodone pills petitioner consumed for personal use pursuant to his valid prescriptions.

For sentencing purposes, the government must prove the drug quantity attributable to a particular defendant by a preponderance of the evidence. *See United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999). And there is no doubt that the drug quantity attributable to a defendant is a very important factor in the sentencing equation. *See* U.S.S.G. § 2D1.1(c). Indeed, "an attorney's failure to object to an error in the PSIR's calculation of the [drug amount]—if left uncorrected by the district court—[may] be grounds for finding deficient performance." *Howard v. United States*, 743 F.3d 459, 464 (6th Cir. 2014); *see also Arredondo v. United States*, 178 F.3d 778, 788 (6th Cir. 1999) ("A failure to investigate, participate in, and prepare for the sentencing proceedings fails to satisfy an objective standard of reasonableness . . . ."). Here, petitioner argues that the drug amount used in the PSIR calculation of his Guidelines offense level was erroneously high given the Fourth Circuit's decision in *United States v. Bell*, 667 F.3d 431 (4th Cir. 2011), which issued a month prior to petitioner's sentencing hearing and which

appears to be controlling here.[26] As such, a brief summary of the facts and holding in *Bell* is in order.

In *Bell*, a sixty-five year old defendant obtained oxycontin pills pursuant to valid prescriptions, but did not consume all of the prescribed pills. Instead, she sold some of the pills to buy lottery tickets. *Bell*, 667 F.3d at 434. In determining the quantity of drugs attributable to that defendant, the district court rejected the argument that pills taken for personal use should have been deducted from the total drug amount, relying on the principle that "[w]here a drug conspiracy is involved, drugs obtained by the defendant for her personal use are properly included in the quantity of drugs that the defendant knew were distributed by the conspiracy." *Id.* at 439.

The Fourth Circuit rejected this reasoning. Judge Davis, writing for the panel, noted that although that principle might be applicable and valid for a conspiracy involving Schedule I drugs or for conspiracies involving non-Schedule I drugs where those drugs were not lawfully obtained, the principle has no application in a conspiracy involving non-Schedule I drugs where a co-conspirator claims to have used some of the drugs pursuant to a lawful and valid prescription. *Id.* at 442. To do otherwise, according to Judge Davis, creates a risk that a co-conspirator will be punished for lawful conduct. As Judge Davis put it,

> presuming that the full quantity possessed by conspiracy members is "contraband . . . within the scope of the criminal activity," without requiring the government to prove and without a factual finding by the district court explicating the evidence supporting that finding, creates an unacceptably high risk that a defendant will be punished for drug quantities a portion of which was lawfully obtained, possessed and consumed.

---

[26] Although petitioner, filing *pro se*, explicitly relied on *Bell* in his § 2255 motion, government counsel inexplicably and surprisingly failed to cite or address that decision in its response.

20

*Id.* at 443. To address this high risk, Judge Davis made clear that where, as here, a co-conspirator claims to have made personal use of some of the drugs involved in a conspiracy pursuant to a lawful, valid prescription, the district court must make factual findings as to the amount of drugs properly attributable to that co-conspirator. Four factual findings a district court might make were identified in *Bell*: (i) that the conspiracy actually distributed a particular amount; (ii) that the person who was prescribed the drug lawfully kept and consumed only a portion (or none) of the prescribed amount; (iii) that the pills were obtained fraudulently, and were not lawfully obtained; or (iv) that each and every pill obtained, even if pursuant to a valid prescription, was obtained with the intent that it would or could be distributed. *See Bell*, 667 F.3d at 443.

In this case, of course, no such findings were made because Counsel did not object to the drug amount in the PSIR and did not argue that a lesser drug amount was properly attributable to petitioner. Ultimately, then, this is a case where Counsel's failure to raise an objection to the PSIR based on *Bell* was objectively unreasonable because Counsel did not conduct a "reasonable investigation of law." *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009).

In response, the government relies on Counsel's affidavit, in which Counsel states that based on the evidence at trial, Counsel believed that "an argument that the pills were mainly for personal use [was] difficult, if not counterproductive."[27] Although this explanation might suffice to explain why this argument was not made to a jury, it is inadequate to explain Counsel's failure to attempt to reduce petitioner's offense level at the *sentencing* hearing, especially in light of *Bell*. The government also points out that the PSIR's estimate of the drugs attributable to petitioner is labeled "conservative," but this characterization, by itself, is not a factual finding as

---

[27] Kiyonaga Affidavit at 2.

21

prescribed by *Bell*. *See Bell*, 667 F.3d at 443. Thus, Counsel's failure to object to the PSIR's drug amount attributable to petitioner, as required by *Bell*, constitutes deficient performance under *Strickland*.[28]

Nor is there any doubt that petitioner was prejudiced by Counsel's failure to object to the PSIR based on *Bell*. In order to show prejudice, petitioner must demonstrate that "but for counsel's failure to object, there is a 'reasonable probability' that he would have received a shorter sentence." *United States v. Smith*, 497 F. App'x 269, 274 (4th Cir. 2012) (citing *Strickland*, 466 U.S. at 694).[29] Petitioner has carried his burden on this point.

First, petitioner has shown that there is a reasonable probability that his criminal offense level would have been a 32 instead of a 34, which would have reduced his Guidelines sentencing range from 151 to 188 months to 121 to 151 months. In this respect, petitioner claims he consumed three pills a day for personal use over a period of four years, nine months. To be sure, the Court might not have accepted this claim, but at least, the Court would have made the necessary factual findings on this issue pursuant to *Bell*, which would have included petitioner's testimony. Therefore, the simple fact that the necessary factual findings were not made as to the proper drug quantity attributable to petitioner ensures that petitioner has carried his burden on this point because a reasonable probability is simply a "probability sufficient to undermine confidence in the outcome." *Rose v. Lee*, 252 F.3d 676, 689 (4th Cir. 2001). This is so because

---

[28]*See also Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (noting that "failure to object to the calculation error" with respect to drug quantity was a "clear lapse in representation" when the objection was "a dead-bang winner").

[29]*See also United States v. DeGroat*, 102 F. App'x 956, 960 (6th Cir. 2004) (noting that to demonstrate prejudice, petitioner had to show "a reasonable probability that, had her trial counsel objected to the [drug quantity] attributed to [petitioner], the outcome at [petitioner's] sentencing would have been different"); *Johnson*, 313 F.3d at 818 (same).

an error "in the calculation of the applicable Guidelines range . . . infects all that follows at the sentencing proceeding, including the ultimate sentence chosen by the district court . . . ." *United States v. Diaz-Ibarra*, 522 F.3d 343, 347 (4th Cir. 2008).

In sum, because petitioner's argument has undermined confidence in his offense level, and because an erroneous criminal offense level calculation infects all results which follow, including the ultimate sentence imposed, petitioner has demonstrated a reasonable probability that he would have received a shorter sentence.[30] Of course, it is entirely possible that upon making the necessary factual findings regarding the pills petitioner consumed for personal use, petitioner's offense level might well remain unchanged.[31] Nonetheless, petitioner has shown a reasonable probability that his offense level would be lower. And, in the end, this is a situation where depriving petitioner of the ability to present evidence and arguments on the drugs he lawfully consumed for personal use rendered the sentencing proceeding "fundamentally unfair or unreliable." *Lockhart*, 506 U.S. at 369.

As a result, the "most appropriate remedy" is to hold a resentencing hearing in order for the Court to make the requisite factual findings with respect to the quantity of drugs properly attributable to petitioner and thus accurately ascertain petitioner's criminal offense level. *See United States v. Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1997) ("Certainly the most 'appropriate'

---

[30] *Johnson* is instructive on this point. In *Johnson*, the Second Circuit rejected the argument that the defendant suffered no prejudice from his counsel's failure to object to the PSIR because the "defendant could have received the same sentence of 151 months at either [offense level]." *Johnson*, 313 F.3d at 818. Although the defendant could have received the same 151-month sentence even if his counsel had objected to the PSIR, the Second Circuit held that prejudice was established merely by showing that there was a reasonable probability that the sentence imposed could have been lower had counsel objected to the PSIR. *Id.*

[31] It is also possible that even if petitioner is adjudged to be entitled to a lower offense level, he may still receive the same sentence he previously received based on an individualized assessment of the § 3553(a) factors as applied to petitioner.

remedy is to put § 2255 defendants in the same boat as direct appellants, i.e. to permit resentencing.").

## VII.

In sum, although petitioner has not demonstrated ineffective assistance of counsel with respect to his first three arguments, petitioner has demonstrated ineffective assistance of counsel with respect to his fourth argument. Specifically, Counsel's performance was objectively unreasonable in not objecting to the PSIR based on *Bell*, and because there is a reasonable probability that upon making this objection petitioner would have received a shorter sentence, petitioner was prejudiced as well. Therefore, petitioner is entitled to a new sentencing hearing on this ground.

An appropriate Order will issue.

Alexandria, VA
December 4, 2014

_____
T. S. Ellis, III
United States District Judge